MOORE v. PALMER.

(Filed June 11, 1903.)

EVIDENCE—*Incompetent—The Code, Sec. 590—Partnership.*

> In an action for goods sold to a firm, the testimony of one partner, who admitted his liability by failing to answer that the goods were furnished by the plaintiff on the order of the firm, is not competent as against the executor of the deceased partner or as against the firm.

> CLARK, C. J., dissenting.

ACTION by D. W. Moore against James Palmer and others, heard by Judge *T. A. McNeill* and a jury, at September Term, 1902, of the Superior Court of GUILFORD County. From a judgment for the plaintiffs, the defendants appealed.

*King & Kimball,* for the plaintiff.
*John A. Barringer,* for the defendants.

MONTGOMERY, J.   The plaintiffs alleged in their complaint that the defendants, James Palmer and John Eudy, the testator of the other defendant, were partners and that at the death of Eudy the partnership owed to the plaintiffs a balance of about $235 for goods sold and delivered to them. On the trial the defendant Palmer was allowed to testify over the objection of the other defendant, "that he and the

testator Eudy had entered into a co-partnership for the purpose of cleaning out and putting in proper shape and condition, and selling the Lindsay mine. That they were to bear all expenses incident thereto equally and after paying the same divide the profits on the same basis; that the work of cleaning out the mine commenced the latter part of November, 1896, and ran up to the time of Eudy's death, the 15th June, 1897. That the goods, the price of which was sued for, were furnished by the plaintiff on his order for the firm of Palmer & Eudy in the main, but some was for tools, etc., used about the mine." In his instructions to the jury his Honor said in reference to that testimony, "Now, I have to say to you that it was possible error to have admitted the testimony of Palmer as to transactions with the deceased man, Eudy, and those statements are excluded from your consideration as against such party, but they may be considered as against Palmer only, the man making them. I exclude from your consideration all transactions and communications as against Eudy." The evidence was clearly incompetent. *Fertilizer Co. v. Rippy,* 123 N. C., 656. And the question that presents itself is, was the effect of the attempted correction of the error in his Honor's instruction to put the defendant in the same condition as if the evidence had not been received. We think it did not. The jury should have been instructed not to consider any part of the witness's evidence except that part in which he stated that the plaintiff furnished the goods on his (witness's) order, and not to consider his testimony of the alleged partnership even in connection with the witness himself. It may have been that the jury would not have believed the testimony of the other witnesses concerning the partnership, if Palmer's testimony on that question—allowed it is true only against himself—had not been given in. His testimony may have given more weight to the testimony of the other witnesses concerning the al-

leged partnership than it would have carried without it.   His
Honor should have held that all that the witness Palmer
could testify to was that he had ordered the goods, and that
he was therefore liable for the price.   He should not have
submitted to the jury, on Palmer's evidence, anything con-
cerning the alleged partnership to hold even Palmer himself
on the partnership liability.   If there had been a partner-
ship existing between himself and Eudy at the time Palmer
ordered the goods, and if they were used for the partnership
benefit, those matters should have been proved by other wit-
nesses.

   Error.

   WALKER, J., concurring.   This action was brought to re-
cover the amount of an account for goods alleged to have
been sold and delivered by the plaintiffs to the firm of Palmer
& Eudy.   The defendant Palmer filed no answer and did not
deny his individual liability, but the defendant Moon, ad-
ministrator of Eudy, did answer and deny the partnership,
and also denied that any goods had been sold or delivered to
his intestate, as a member of said firm or otherwise.

   The plaintiffs, in order to establish their claim, introduced
as a witness, the plaintiff, Moore, who on his examination was
asked to state to whom plaintiffs sold the goods.   The defend-
ants objected to this question, the objection was overruled and
the defendants excepted, the court holding at the time "that
anything the witness might say about the intestate Eudy be-
ing connected with the business or any transaction between
him and the plaintiffs would be incompetent and should not
be considered by the jury, but that the witness might state
to whom he sold the goods as affecting and bearing upon the
liability of the defendant Palmer."   Thereupon, the witness
testified "that he had repeatedly seen the intestate  Eudy,
about the mine which was being cleared up; that he had re-

peatedly heard him giving orders to the employees there working under the defendant Palmer; that he had repeatedly carried Eudy there, and had gone with him from his home, where Eudy boarded, to the mine. That the bill sued on was for goods furnished to laborers working for Palmer and Eudy and were furnished upon the order of Palmer; that the balance due plaintiffs April 7, 1897, was $935.63, and that no part of the same was paid, but the whole was still due and owing. That the mine being cleaned up was the Lindsay mine. That the account originally was for a sum between three and four hundred dollars; that $50 had been paid thereon in December, 1896, and $44 in the spring of 1897. That Eudy died June 15, 1897."

It is conceded that the court may admit testimony, which is competent against one of the parties to the suit and not against another, for the purpose of charging with liability the party against whom it is competent. The rule is well settled, but I do not think it is applicable to this case. The testimony may be admitted and restricted to one of the parties, but it should not be admitted in such a form as is calculated to prejudice the other party, if this can be avoided.

Why it was necessary to show the liability of Palmer, when he had not denied it and was not disputing the plaintiffs' claim, I can not understand. It will be observed that while the court ruled that Moore might state "to whom he sold the goods as affecting and bearing upon the liability of the defendant Palmer," the testimony elicited from the witness Moore almost wholly related to dealings, transactions and communications with Eudy. It is true that the court, in its charge, told the jury that so far as the testimony of Moore "tended to bear upon the question of partnership between Palmer and Eudy or any contract with Eudy and the witness, or any conversation or transaction between the witness and Eudy, it was excluded and his testimony was only bind-

ing upon the defendant Palmer," but I do not think that this caution was sufficient or that the evidence, under the circumstances of the case, should have been admitted. Why do the vain thing of proving the admitted liability of Palmer, and what effect could the testimony have had but to prejudice the administrator of Eudy? It was either relevant for the purpose of charging the administrator of Eudy or it was not relevant at all. The court thought it was incompetent and in a general way told the jury to disregard it except as to Palmer, but did not tell them which part of it was competent as to Palmer and incompetent as to Eudy's administrator. How could the jury be expected to make the discrimination? But the chief error was in submitting the testimony to the jury at all, as it was not necessary to show Palmer's liability and the testimony might have influenced and no doubt did influence the jury in returning a verdict against Eudy's administrator.

The court below permitted the witness Palmer to testify that the goods were furnished by the plaintiffs, on his order, for the firm of Palmer & Eudy. The jury were afterwards instructed that the testimony could only be considered as against Palmer for the purpose of fixing him with liability.

What I have said as to the testimony of the witness Moore is equally applicable to the testimony of Palmer. He was alleged to be a member of the firm composed of himself and Eudy and was interested in the event of the action, as a recovery against Eudy would diminish his liability to the plaintiffs by one-half. *Fertilizer Co. v. Rippy,* 123 N. C., 656; *Lyon v. Pender,* 118 N. C., 150. As I have said, no answer was filed by Palmer and there was no denial of or dispute as to his liability. The jury may, therefore, have been misled by the admission of his testimony. They could not very well consider it as to Palmer, for he did not deny his liability, and it is impossible to tell what influence it may have had upon

the jury in passing upon the real issue involved as to the liability of Eudy's estate, notwithstanding the caution of the court.

If Palmer had denied his liability, it would have been sufficient to establish it for the plaintiffs to have shown by him that he ordered the goods without requiring him to state for whom he ordered them. In this case, the judge could have admitted the testimony in a way so as to have charged Palmer, if he had denied his liability and it was necessary to charge him, without, at the same time, injuriously affecting Eudy's estate. The proof, of a partnership as against Palmer, so as to charge him as a member of the firm, would necessarily involve the finding by the jury that there was a partnership between Palmer and Eudy and in this way the estate of Eudy may have been prejudiced. The proof should have been so confined as to have related solely to Palmer's individual liability. If Palmer ordered and received the goods, he was liable, whether he was a partner or not. It is apparent, I think, that the testimony of Moore and Palmer was not admitted merely to show a delivery of the goods to Palmer and the value thereof.

If the jury did not base their verdict on the testimony of the witnesses Moore and Palmer, I do not see upon what testimony they found that the goods had been sold to Palmer and Eudy. The testimony of Charles Palmer, the only other witness in the case, except Ragon, who testified about an entirely different matter, related to the partnership and not to the sale and delivery of the goods.

The judge ruled out all of the testimony of the witnesses Moore and Palmer, so far as it tended to charge Eudy's estate with liability, and, having done so, no testimony remained upon which to base a verdict as to the sale and delivery of the goods to the firm, Charles Palmer, as we have said, testifying only to the partnership.

It follows, therefore, that there was no evidence of the sale and delivery of the goods, so far as Eudy was concerned, and it would seem that the motion of the defendant in the court below to dismiss the complaint under the statute should have been granted, and there was error in not doing so, for which a new trial should be awarded.

DOUGLAS, J., concurs in the concurring opinion of WALKER, J.

CLARK, C. J., dissenting. This is an action to recover $235.63 for goods and merchandise sold to the defendant James Palmer and John Eudy (the testator of defendant Moon) trading and doing business as partners. One Charles Palmer testified without objection that he knew Eudy and had on many occasions gone with him from his home to the Lindsay mine, where his father (the other defendant) was cleaning out the same; there were engaged in cleaning out the mine ten or a dozen laborers; that several times Eudy had stated to him that he and defendant James Palmer were partners in opening up and developing the Lindsay mine for sale, and that they were to bear the expenses equally and share the profits on the same basis; that Eudy did not want to be known in the transaction; that he had often heard the testator, Eudy, giving instructions to parties working in and around the mine as to what to do and how to do it.

The plaintiff testified, *without exception,* that he had repeatedly seen the testator Eudy about the (Lindsay) mine, which was being cleaned out; that he had repeatedly heard him giving orders to the employees there working under defendant, Palmer, that he had repeatedly carried Eudy there, gone with him from his home, where Eudy boarded, to the mine; that the bill sued on was for goods furnished to laborers working for Palmer and Eudy and were furnished upon the order of Palmer; that the balance due, deducting

payment, was $235.63, with interest from April, 1897. None of these things were "transactions or communications" between the plaintiff and deceased. *Gray v. Cooper,* 65 N. C., 183; *Cowan v. Layburn,* 116 N. C., 526; *Johnson v. Rich,* 118 N. C., 270. The evidence was competent, and the judge further told the jury they could only consider the evidence as to whom he sold the goods as affecting the liability of Palmer. It is true that the first assignment of errors recites the admission of other evidence which would be objectionable, but such recital goes for naught unless the "case on appeal" as settled sets out that such evidence was in fact admitted. *Walker v. Scott,* 106 N. C., 56; *Merrell v. Whitmire,* 110 N. C., 367; *Luttrell v. Martin,* 112 N. C., 593. Otherwise a party could always get a new trial by reciting as facts matters which do not appear in the "case on appeal." *State v. Dixon,* 131 N. C., 813; *Patterson v. Mills,* 121 N. C., 268.

Upon the above evidence there was certainly more than a scintilla to show that Palmer and Eudy were partners, and that the plaintiff sold the goods to Palmer to be used in the business in which, as Charles Palmer testified, Eudy admitted he was a partner. It was therefore not error to refuse to non-suit the plaintiff.

James Palmer, defendant, testified that he and Eudy were partners and that the plaintiff furnished the goods on his order to be used by the firm in cleaning out the mine. The judge subsequently withdrew this evidence from the jury and told them not to consider it as affecting Eudy's estate "or in any way bearing upon the question whether he was a partner of Palmer and should be excluded, and should be considered by them only so far as it affected the defendant Palmer himself." The decisions are numerous and recent that if incompetent evidence is admitted the error can be cured by withdrawing the evidence and telling the jury not to consider it. *Wilson v. M'f'g Co.,* 120 N. C., 94, and

cases there collected; *Crenshaw v. Johnson*, 120 N. C., 270; *State v. Apple*, 121 N. C., 584; *Waters v. Waters*, 125 N. C., 591; *State v. Ellsworth*, 130 N. C., 691.

It is contended however that as Palmer had not answered, this evidence was unnecessary as to him, but the court restricted it to him, and if unnecessary the other defendant could not complain. In fact, it was not unnecessary as to Palmer, for though he had filed no answer the plaintiff still had to prove the delivery and value of the articles as against him, for at most the plaintiff could only have taken judgment by default and inquiry against him for failure to file answer.

Nothing is more usual than when there are two or more defendants for evidence to be admitted against one or more, which evidence the jury are told not to consider against the other defendants, and this is true both in criminal and civil cases. The admissions of one defendant are admissible to show a partnership as against himself "to prove his own membership, who were his co-partners, and the scope of business," though incompetent against others alleged to be partners in the same action. Abbott Trial Ev., 259 (14) ; 2 Rice on Ev., Sec. 450, citing numerous cases; 2 Greenleaf Ev., (16 Ed.), Sec. 484. Even in joint trials for fornication and adultery it is held that the admissions of one party are competent against that person "where the jury are instructed that such admissions can only be considered upon the guilt of the party making them." *State v. Rinehardt*, 106 N. C., 787; *State v. Cutshall*, 109 N. C., 764; 26 Am. St. Rep., 599. So in murder riot and other offences, when two or more are on trial, the admissions or confessions of one that he and the others named committed the act charged, have always been admitted against him, though the jury are instructed not to consider the evidence against the other defendants.

The evidence of Palmer was competent to show the partnership as against himself, though the judge properly withdrew

it from the jury and told them not to consider it against Eudy. *Fertilizer Co. v. Rippy,* 123 N. C., 656; S. C. 124 N. C., 651.

On cross examination James Palmer testified that Brown, Eudy's executor, (since deceased) had said he was going to pay the account sued on and the defendant excepted. This was not a transaction or communication with one deceased to fix his estate with any liability, and was competent to rebut the plea of the Statute of Limitations. Brown's personal representative is not a party to this action.

The other exceptions are without merit and require no discussion.